IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-00260-CYC

TASHA M. BARBER,

   Plaintiff,

v.

CHRISTINE M. MACK,

   Defendant.

## ORDER ON MOTION TO STRIKE

**Cyrus Y. Chung, United States Magistrate Judge.**

This matter is before the Court on Plaintiff's F.R.E. 702 Motion to Strike Opinions of Jonathan Delk. ECF No. 28. The motion is fully briefed, ECF Nos. 30 & 31, and the Court does not find that oral argument would materially aid it in reaching a determination. For the reasons set forth herein, the Court grants the motion.

## BACKGROUND

This case arises out of a collision between two skiers at Aspen Highlands Ski Resort on March 19, 2023. ECF No. 7 ¶ 5. The plaintiff alleges that the defendant was skiing uphill of her and had the primary duty to avoid colliding with the plaintiff. *Id*. ¶¶ 8-9. As a result, the plaintiff seeks damages for her injuries from the crash. *Id*. ¶¶ 17-18. The defendant denies the allegations and, as part of her defense, retained Jonathan Delk as an expert. In his expert report, Mr. Delk includes a section titled "Conclusion and Opinions" in which he reaches a variety of factual conclusions and offers his opinions. ECF No. 28-5 at 7-11. At the end of that section, Mr. Delk offers three opinions:

1. Tasha Barber was responsible for avoiding the collision based on her being the uphill skier.

2. Tasha Barber was neither prepared nor aware enough to begin skiing, nor does she acknowledge that her being in motion ("coasting") as skiing, which it is. These real facts and perspectives shared by Tasha Barber prove that Tasha was not sufficiently in control or aware of her surroundings to have avoided a collision.

3. Tasha Barber's choice of actions to avoid the collision (shouting, leaning back, twisting) were ultimately the cause of her skis coming into contact with Christine Mack's. Tasha Barber's movements were the ultimate mechanism of her injury.

ECF No. 28-5 at 11. The plaintiff challenges the admissibility of these opinions, characterizing them as paid advocacy masquerading as expert testimony.

## LEGAL STANDARD

Fed. R. Evid. 702 governs the analysis of the plaintiff's challenge. It provides that

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702; *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590-91 (1993). "Rule 702 imposes upon the trial judge an important 'gate-keeping' function with regard to the admissibility of expert opinions." *Mathis v. Huff & Puff Trucking, Inc.*, 787 F.3d 1297, 1307 (10th Cir. 2015) (modification and citation omitted). When such opinions are challenged, "[t]he proponent of expert testimony bears the burden of showing that its proffered expert's testimony is admissible." *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009). That burden is

one of establishing that the admissibility requirements are met by a preponderance of the evidence. Fed. R. Evid. 702 advisory committee's note (2000 amendment).

To determine whether an expert opinion is admissible, the Court must perform "a two-step analysis." *Roe v. FCA US LLC*, 42 F.4th 1175, 1180 (10th Cir. 2022). First, the Court must determine whether the expert is "qualified by 'knowledge, skill, experience, training, or education' to render an opinion." *Id*. at 1180 (quoting Fed. R. Evid. 702).

If the expert is so qualified, the Court then assesses the proffered opinions for reliability. *Id*. at 1180-81 (citations omitted); Fed. R. Evid. 702(b)-(d). To perform that function, a court must "assess the reasoning and methodology underlying the expert's opinion, and determine whether it is both scientifically valid and applicable to a particular set of facts." *Dodge v. Cotter Corp*., 328 F.3d 1212, 1221 (10th Cir. 2003) (citing *Daubert*, 509 U.S. at 592-93). In assessing whether a methodology is reliable, a court may consider several non-dispositive factors, including "(1) whether the theory can be tested; (2) whether it is subject to peer review and publication; (3) the known or potential error rate; (4) the existence and maintenance of standards; and (5) the general acceptance in the relevant scientific community." *United States v. Foust*, 989 F.3d 842, 845 (10th Cir. 2021) (citing *Daubert*, 508 U.S. at 593-94). Courts also have "broad discretion to consider a variety of other factors." *Etherton v. Owners Ins. Co*., 829 F.3d 1209, 1217 (10th Cir. 2016) (quotation marks and citation omitted). Next, the court must assess whether the expert used sufficient facts and data as required by the methodology and whether the expert reliably applied the methodology to the facts of the case. *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1221-24 (D. Colo. 2008) (citations omitted); *see also Roe*, 42 F.4th at 1181. "Expert testimony based on experience alone must reveal how the experience led to the expert's conclusion, why the experience is a 'sufficient basis for the opinion,' and how the experience

was reliably applied." *United States v. Martinez*, 88 F.4th 1310, 1314 (10th Cir. 2023) (quoting *United States v. Medina-Copete*, 757 F.3d 1092, 1104 (10th Cir. 2014)). Establishing reliability does not require showing that the expert's testimony is indisputably correct, *United States v. Pehrson*, 65 F.4th 526, 540 (10th Cir. 2023) (quotation marks and citation omitted); *see Goebel v. Denver & Rio Grande W. R.R. Co.*, 346 F.3d 987, 991 (10th Cir. 2003) (discussing how the opinion is tested against the standard of reliability, not correctness), but "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Roe*, 42 F.4th at 1181 (quoting *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997)). "[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

Under Rule 702, a court must also ensure that the proffered testimony is relevant and will assist the trier of fact. *Id*. at 156; *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122-23 (10th Cir. 2006). "Relevant expert testimony must logically advance[ ] a material aspect of the case and be sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *United States v. Garcia*, 635 F.3d 472, 476 (10th Cir. 2011) (quotation marks and citations omitted). In assessing whether expert testimony will assist the trier of fact, a court should also consider "whether the testimony 'is within the juror's common knowledge and experience,' and 'whether it will usurp the juror's role of evaluating a witness's credibility.'" *Id*. at 476-77 (quoting *Rodriguez-Felix*, 450 F.3d at 1123).

4

## ANALYSIS

The plaintiff characterizes Mr. Delk's opinions as irrelevant, devoid of legal support, prejudicial, and invading the province of the jury. ECF No. 28 at 14. The Court ultimately finds that they are not supported by Mr. Delk's qualifications or methodology.

Regarding the first step of Mr. Delk's qualifications to render the opinions offered in his report, *see Roe*, 42 F.4th at 1180, Mr. Delk is experienced in ski instructor training and, through the Professional Ski Instructors of America and American Association of Snowboard Instructors, he is a certified instructor. ECF No. 28-6 at 2; ECF No. 28-5 at 1. That background clearly makes him knowledgeable about the general responsibilities of skiers, such as those enumerated in the Skier's Responsibility Code and the Colorado Skier's Safety Act.

But general qualifications alone do not end the analysis. Mr. Delk's third enumerated opinion, for instances, states:

> 3. Tasha Barber's choice of actions to avoid the collision (shouting, leaning back, twisting) were ultimately the cause of her skis coming into contact with Christine Mack's. Tasha Barber's movements were the ultimate mechanism of her injury.

ECF No. 28-5 at 11. The second sentence of that opinion does not relate to Mr. Delk's experience or training. To opine about the ultimate mechanism of injury is a medical conclusion, and neither Mr. Delk nor the defendant contend that Mr. Delk has any medical training, education, or experience that would allow him to render an expert opinion on injury causation. And given that it is the defendant who "bears the burden of establishing that the expert is qualified" to render his opinions, *Abraham v. WPX Prod. Prods., LLC*, 184 F. Supp. 3d 1150, 1189 (D.N.M. 2016), that alone defeats the propriety of this section of the opinion.

The defendant demurs. That sentence, she insists, simply weighs in on liability, not injury. ECF No. 30 at 8-9. That is not what it says. The first sentence is the one that opines on the cause of the collision; the second plainly adds a gloss regarding the cause of the plaintiff's

5

injury. Mr. Delk has no qualifications permitting such a gloss. Accordingly, the Court will exclude Mr. Delk's opinion regard the cause of the plaintiff's injuries.

The first sentence of the opinion fares no better for a different reason: it lacks reliability. Mr. Delk does not explain his methodology for reaching this opinion. For aught that appears, Mr. Delk's opinion is based almost entirely on his selection of facts, *see* ECF No. 28-5 at 3, 11, without apparent application of reliable principle or experience that grounds his selectivity or that would aid a jury. It therefore fails to "reveal how the experience led to the expert's conclusion," let alone "how the experience was reliably applied." *Martinez*, 88 F.4th at 1314. As such, the Court finds the first sentence of this third enumerated opinion unreliable and strikes it.

The two remaining opinions suffer from the same infirmity. These are:

1. Tasha Barber was responsible for avoiding the collision based on her being the uphill skier.

2. Tasha Barber was neither prepared nor aware enough to begin skiing, nor does she acknowledge that her being in motion ("coasting") as skiing, which it is. These real facts and perspectives shared by Tasha Barber prove that Tasha was not sufficiently in control or aware of her surroundings to have avoided a collision.

Mr. Delk's training and experience are more relevant to these opinions; they at least relate to the general obligations of skiers. According to Mr. Delk's report, he considered deposition transcripts, documents from this case, the Colorado Ski Safety Act of 1979, the NSAA Skier's Responsibility Code, and a video of the incident. ECF No. 28-5 at 2.

But neither opinion grounds itself in reliable application of methodology or experience. The justification for Mr. Delk's first opinion, for example, begins by noting that the Colorado Ski Safety Act put the primary duty to avoid collision "on the person skiing downhill" as to "any person or objects below him." ECF No. 28-5 at 7. That is fine as far is it goes. But the main conclusion he employs in the opinion — that the plaintiff was the uphill skier — is largely rooted in his estimation of the paths of travel of the various individuals involved. ECF No. 28-5 at 7-9.

6

And it is unclear what methodology Mr. Delk employed in crafting that estimation. He provides terrain photographs and states conclusions, *Id.* at 8, but their provenance is a mystery: there is no analysis, measurements, information about the grade of the land, or any concrete methodology supporting the conclusions.[1] In short, "the report [is] insufficient to allow the district court to 'assess the reasoning and methodology underlying the expert's opinion.'" *Rodriguez-Felix*, 450 F.3d at 1125 (quoting *Dodge*, 328 F.3d at 1221). The defendant bears the burden of showing "that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which satisfy Rule 702's reliability requirements." *Dodge*, 328 F.3d at 1222 (citation omitted). She has not satisfied this burden.

The defendant protests, arguing that Mr. Delk applied specialized terrain knowledge to plot probable paths and project the parties' trajectories. ECF No. 30 at 7. That is not what his report shows. Instead, Mr. Delk presents two maps with path lines drawn on them without explanation as to why those paths would be any more reliable than a casual skier's guess. That will not do. It does nothing to "explain how [his] experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Medina-Copete*, 757 F.3d at 1104 (quoting Fed. R. Evid. 702, advisory committee notes (2000 amendment)). Ultimately, the purpose of the *Daubert* inquiry is always "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152. Mr. Delk's report

---

[1] The defendant indicates that some of Mr. Delk's analysis comes from personal experience with the location in question. ECF No. 30 at 6. That may be, but no such explanation appears within Mr. Delk's report, ECF No. 28-5, and the averments of counsel do little to amplify the methodology of an expert.

7

inspires little confidence that that will occur here. Accordingly, the Court finds Mr. Delk's opinion that "Tasha Barber was responsible for avoiding the collision based on her being the uphill skier" to be unreliable and, therefore, strikes that opinion.

Similarly, the second remaining opinion fails on the question of reliability. Mr. Delk opines that:

> Tasha Barber was neither prepared nor aware enough to begin skiing, nor does she acknowledge that her being in motion ("coasting") as skiing, which it is. These real facts and perspectives shared by Tasha Barber prove that Tasha was not sufficiently in control or aware of her surroundings to have avoided a collision.

ECF No. 28-5 at 11. Mr. Delk's opinion on the mental state of the plaintiff appears detached from any cognizable methodology. Indeed, he provides no clear path as to how he arrived at his conclusion. His statement that coasting is skiing — while potentially true — appears to be pure *ipse dixit* on the face of the report. Accordingly, the Court concludes that the defendant has not satisfied her burden of showing that the opinion is reliable.

In sum, Mr. Delk's opinions incorporate little by way of reliable expertise. His first opinion is rendered not to illustrate the impropriety of skiing uphill — which could be a valid subject for expert testimony — but instead to opine that the plaintiff was skiing uphill, grounded, apparently, in an "assum[ption]." ECF No. 28-5 at 7. His second opinion, rather than educating the jury as to how one would be prepared to ski, simply casts aspersions on the plaintiff's preparedness level. His third appears to have "no application of knowledge, experience, or expertise to the conclusion" he "reaches about proximate cause." *Lawton v. Hotspur Sports Co.*, Case No. 16-cv-00570-RM-KMT, 2017 WL 2672109, at *5 (D. Colo. June 21, 2017). And while a jury can consider opposing testimonies, *id.* at *2, when one of them comes from a purported expert, it must still be grounded in reliable experience or methodology to "help the trier of fact to

8

understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Mr. Delk's opinions, as presented in his report, are not.

Because the Court concludes that all three proffered opinions should be stricken either because Mr. Delk is not qualified to offer them or because they are not reliable, the Court need not consider whether the opinions are relevant.

## **CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Plaintiff's F.R.E. 702 Motion to Strike Opinions of Jonathan Delk, ECF No. 28. The Court **EXCLUDES** Mr. Delk's opinions contained within his report.

Entered this 27th day of January, 2025, at Denver, Colorado.

BY THE COURT:

_____
Cyrus Y. Chung
United States Magistrate Judge

9